UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 OCT 30 PM 1:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

NATIONAL FLORAL SUPPLY OF )
MARYLAND, INC., )
      Plaintiff, )
       )
vs. )   Civil Action No. CV-97-S-2893-NE
       )
IRMA M. SCHLARB; )
EARL G. SCHLARB, )
      Defendants. )

ENTERED
OCT 30 1998

## MEMORANDUM OPINION

Plaintiff alleges defendant Irma M. Schlarb used and is using knowledge and information acquired during her employment with plaintiff to assist her husband, defendant Earl G. Schlarb, in the formation and operation of a competing business. Mrs. Schlarb allegedly breached an employment agreement with plaintiff, misappropriated trade secrets, tortiously interfered with business relations, and fraudulently suppressed her intent to compete with plaintiff. Defendant Irma M. Schlarb filed a counterclaim, seeking an amount due her as unpaid wages, liquidated damages, interest, and costs under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219. The action presently is before this court on competing motions for summary judgment on the original claims and the counterclaim.

41

## I. SUMMARY JUDGMENT STANDARD

Summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." Rule 56(c), Fed. R. Civ. P. The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(per curiam). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v.*

3

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. FACTS

**A.  Irma Schlarb's Relevant Employment History**

Plaintiff National Floral Supply of Maryland, Inc. ("National Floral") is engaged exclusively in the business of operating flower shops at military bases and installations across the United States. During the period from May 18, 1987, until May 17, 1997, National Floral, pursuant to a contract with the Army and Air Force Exchange Service ("AAFES"), operated a floral shop at the Post Exchange ("PX") on Redstone Arsenal, Huntsville, Alabama. For this shop at least, National Floral relied solely on the market created by military personnel, their dependents, and retired military personnel and their dependents. (Deposition of Kathryn B. O'Brien, pursuant to Rule 30(b)(6), at 112.)

Defendants Irma M. Schlarb and her husband, Earl G. Schlarb, operated a seasonal concessionaire for AAFES at the Redstone Arsenal PX on an annual basis from 1984 until 1994. This operation consisted of making and selling silk and dried flower arrangements,

4

and "tole" painted crafts.[1] Thus, Mrs. Schlarb had experience working with silk flower arrangements prior to her employment by National Floral; she had not worked in an actual flower shop, however, since she was a young girl in Germany.

Mrs. Schlarb was employed by National Floral at its Redstone shop from February 2, 1994, to May 17, 1997. From the time she began this employment until May 15, 1996, Mrs. Schlarb worked as a clerk and was paid on an hourly basis. National Floral promoted Mrs. Schlarb to manager of the Redstone shop on May 16, 1996, a position she held until she resigned on May 17, 1997. As manager, Mrs. Schlarb received a base salary of $275 a week, and had the opportunity to earn bonuses based on the profitability of the store.

Mrs. Schlarb's duties as manager included employee scheduling, opening and closing the store, customer relations, bookkeeping, recordkeeping, cash management, inventory control (including ordering equipment and supplies), floral design, and administrative functions. (See Plaintiff's brief in support of motion, Doc. No. 27, at 2.) National Floral provided some informal training for Mrs. Schlarb, even though the company considered her "fully

---

[1] "Tole" crafts are lacquered or enameled, usually gilded and elaborately painted. See Webster's II New Riverside University Dictionary 1215 (1994).

5

qualified" for the managerial position when they promoted her. (Deposition of Kathryn B. O'Brien, at 67-68.) National Floral instructed Mrs. Schlarb on its established sales practices and procedures, as well as its inventory and pricing procedures. Mrs. Schlarb also served as National Floral's representative to the AAFES.

**B.   The Employment Contract**

Upon receiving the promotion to manager, Mrs. Schlarb entered into an employment contract with National Floral. (*See* Complaint, exhibit A.) The pertinent portions of the "Employment Agreement" read as follows:

> (6) <u>Disclosure of Information</u>. The Employee acknowledges that the list of the Employer's customers as it may exist from time to time is a valuable, special, and unique asset of the Employer's business. The Employee will not, during or after the term of his employment, disclose the list of the Employer's customers or any part thereof to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever. In the event of a breach or threatened breach by the Employee of the provision of this paragraph, the Employer shall be entitled to an injunction restraining the Employee from disclosing, in whole or in part, the list of the Employer's customers, or from rendering any services to any person, firm, corporation, association, or other entity to whom such list, in whole or in part, has been disclosed or is threatened to be disclosed. Nothing herein shall be construed as prohibiting the Employer from pursuing any other remedies available to the Employer for such breach or threatened breach, including the recovery of damages from the Employee.

. . .

(11) <u>Restrictive Covenant</u>. For a period of two (2) years after termination or expiration of this Agreement, the Employee will not, within a radius of five (5) miles from any military base or installation, or within five (5) miles of any present or past business operation of the Employer, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by the Employer at the time of the termination of this Agreement. In the event of the Employee's actual or threatened breach of the provisions of this paragraph, Employer shall be entitled to an injunction restraining the Employee therefrom. Nothing shall be construed as prohibiting the Employer from pursuing any other available remedies for such breach or threatened breach, including the recovery of damages from the Employee.

Mrs. Schlarb says she signed this agreement at the same time she had to sign other paperwork, and that she was not given a copy of the agreement upon execution, nor did she receive one later. (*See* Plaintiff's memorandum in opposition, Doc. No. 38, at 6.) National Floral claims to have sent a copy to Mrs. Schlarb *via* standard mail. (Deposition of Kathryn B. O'Brien, at 58.)

**C.   Award of the Redstone Arsenal Flower Shop Contract**

In late February of 1997, AAFES issued a request for proposals to operate the Redstone Arsenal flower shop for the period from May 18, 1997, until May 17, 2002. The request included National Floral's sales figures for the past twelve months, and the "fee" of

7

10.9% of its revenues that AAFES received. AAFES received three bids, including one from Mr. Schlarb's sole proprietorship, "Woodcrafters & More," on March 14th, and one from National Floral approximately one week later.

Defendants contend Mr. Schlarb prepared the proposal without the aid of Mrs. Schlarb. (*See* Defendants' memorandum in opposition, at 9.) This contention notwithstanding, Mr. Schlarb represented in the proposal that Mrs. Schlarb would manage the store if Woodcrafters & More won the contract. Furthermore, Mr. Schlarb included his wife's resume in the proposal. AAFES awarded the contract to Mr. Schlarb, d/b/a Woodcrafters & More, on April 7, 1997. Given the stated criteria for awarding the contract, National Floral's bid, objectively, was the least competitive of the three submitted. (*See id.* at 8-9.)

On May 5, 1997, National Floral, through its President Cecil Deihl, sent a letter to Mrs. Schlarb stating that plaintiff believed she must have helped her husband with his successful bid. (*See* Deposition of Kathryn B. O'Brien, exhibit 2.) The letter referred to the alleged activities of Mrs. Schlarb as violations of paragraphs six and eleven of the employment agreement, which plaintiff expressed the intent to enforce. Specifically, the

8

letter reminded Mrs. Schlarb she was "not permitted to work for the successful offeror without the explicit written consent of [National Floral]." (*Id.*)

Nevertheless, Mrs. Schlarb terminated her employment with National Floral on May 17, 1997. Woodcrafters & More's correspondence with AAFES identified Mrs. Schlarb as the manager of the Redstone Arsenal store as early as May 19, 1997. Mrs. Schlarb has continued her involvement with this store and currently serves as "co-manager" of Woodcrafters & More. (*See, e.g.*, Deposition of E. Schlarb, at 10, 11.)

Defendants contend Mr. Schlarb repeatedly requested copies of the employment agreement on his wife's behalf "in late Spring and Summer 1997" (affidavit of E. Schlarb, 9/16/98 ¶ 5), but they received one only when served with the complaint in this action in November of 1997. Defendants identify an increased variety and larger inventory in an apparent effort to distinguish its operation from National Floral's. Moreover, defendants call attention to National Floral's admission that, to date, it has incurred no damages as a result of defendants' actions, and that they complain only of future damages that may result from other manager's leaving

9

and, in turn, winning contract bids that plaintiff seeks. (See Deposition of Kathryn B. O'Brien, at 197-98.)

### III. DISCUSSION

**A. Original Claims**

**1. Plaintiff's Motion for Summary Judgment**

In the complaint, plaintiff National Floral alleges five "counts" against defendants: (1) breach of contract by Irma M. Schlarb; (2) violation of Alabama's Trade Secrets Act by defendants; (3) fraudulent suppression of the intent to compete with plaintiff by Mrs. Schlarb; (4) interference with business relations by Earl G. Schlarb; and (5) an action in equity for injunctive relief for violations of the Employment Agreement and of the Alabama Trade Secrets Act. Plaintiff now requests that this court grant summary judgment on counts one and four.

**a. Breach of "Employment Agreement"**

National Floral seeks summary judgment for breach of its employment agreement with Mrs. Schlarb, arguing she "has breached and continues to willfully breach" this agreement. (Plaintiff's brief in support, at 15.) National Floral bases the argument on paragraph eleven of the agreement recited above, the "Restrictive Covenant." Although National Floral describes Mrs. Schlarb's resignation and subsequent employment as breaches of the

10

restrictive covenant, it first must establish the enforceability of this contract provision.

Generally, Alabama law disfavors agreements restricting competition. See Ala. Code § 8-1-1 (1975).[2] The reasons for disfavor are that such agreements "tend not only to deprive the public of efficient service, but tend to impoverish the individual...." *Tyler v. Eufaula Tribune Publishing Co.*, 500 So. 2d 1005, 1006 (Ala. 1986) (citations omitted). These concerns notwithstanding, a covenant not to compete is enforceable if the following four conditions are met: (1) the employer has a protectable interest; (2) the restriction is reasonably related to that interest; (3) the restriction is reasonable in time and place; and (4) the restriction imposes no undue hardship on the employee.

---

[2] § 8-1-1. **Contracts restraining business void; exceptions.**

(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.
(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.
(c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted.

11

*Id.* at 1007 (citing *DeVoe v. Cheatham*, 413 So. 2d 1141, 1142 (Ala. 1982)).

The Supreme Court of Alabama discussed the "protectable interest" requirement for "post-employment restraints" in *Tyler*:

> In order to have a protectable interest the employer must possess a substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetition agreement.... In the case of a "post-employment restraint," ... justification, according to the Restatement (Second) of Contracts § 188, Comment B (1979), generally must be "on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships to which he has had access in the course of his employment." Similarly, we have said that if an employee is in a position to gain confidential information, access to secret lists, or to develop a close relationship with clients, the employer may have a protectable interest....

500 So. 2d at 1007 (internal quotation marks and citations omitted).

Despite persuasive argument regarding the protected interests involved and the reasonableness of the restriction, National Floral cannot escape the plain language of § 8-1-1(b) of the Alabama Code, which establishes the limited conditions for enforceability of restrictive covenants: "so long as the ... employer carries on a like business [within the designated geographic area]." National

12

Floral no longer conducts business within the specified five mile zone of restriction.[3]

Accordingly, National Floral is entitled to no relief for the alleged breaches of the restrictive covenant for any time during which it did not conduct business at Redstone Arsenal. Plaintiff's motion for summary judgment for breach of contract, therefore, is due to be denied. With this ruling, the court does not foreclose the possibility of National Floral obtaining relief for any damages it can prove were incurred during the time plaintiff operated its business in this area and Mrs. Schlarb was involved with Woodcrafters & More, allegedly in violation of the agreement. The court notes that this window of time is narrow, given that the restriction, by its terms, applies only after the termination of Mrs. Schlarb's employment with National Floral on May 17, 1997.

The court finds further that this issue of fact precludes granting defendants' cross motion for summary judgment on this claim. Similarly, issues of fact preclude granting defendants' motion for summary judgment on the breach of contract claim based

---

[3] The court recognizes that the language of the covenant defines the five mile geographic restriction to include "present or past operation" of National Floral, and, generally, "any military base or installation." Nevertheless, the court need state only that this contractual provision conflicts with the express provisions of § 8-1-1(b).

13

upon paragraph six of the agreement, regarding disclosure of confidential information.

### b.  Interference with business relations

The Supreme Court of Alabama adopted the tort of interference with business relations based on Restatement (Second) of Torts § 767.  This action has five elements:  (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; (4) the absence of justification for the defendant's interference; and (5) damage to the plaintiff as a result of the interference.  *See Soap Company v. Ecolab, Inc.*, 646 So. 2d 1366, 1371 (Ala. 1994).

Alabama courts also recognize the doctrine of "competitor's privilege" as a defense to this tort.  *Id.* at 1370.  The doctrine is defined as follows:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue in an existing contract terminable at will does not interfere improperly with the other's relation if
> 
>     (a) the relation concerns a matter involved in the competition between the actor and the other, and
>     (b) the actor does not employ wrongful means and
>     (c) his action does not create or continue an unlawful restraint of trade and
>     (d) his purpose is at least in part to advance his interest in competing with the other.

14

> (2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

Id. at 1369. A competitor, permissibly, may attempt to divert business from his competitors through "attractive offers of his own goods or services." Id. (quoting Restatement (Second) of Torts § 768 cmt. b) (emphasis supplied). If the competitor employs "wrongful means," however, he is not "justified" for purposes of this tort. Id. at 1370.

National Floral claims Mr. Schlarb tortiously interfered with its contract relation with Mrs. Schlarb. This court finds genuine issues of material fact exist as to whether plaintiff suffered damages, and whether Mr. Schlarb was justified for any interference, i.e., whether the "competitor's privilege" doctrine offers a viable defense in this case. Accordingly, summary judgment is inappropriate for this claim.

### 2. Defendants' motion for summary judgment

#### a. Fraudulent suppression of the intent to compete

The four elements of a fraudulent suppression claim are: (1) defendant had a duty to disclose a material fact; (2) defendant concealed or failed to disclose this material fact; (3) defendant's

15

concealment or failure to disclose this material fact induced the plaintiff to act or to refrain from acting; and (4) the plaintiff suffered actual damage as a proximate result. *Locklear Dodge City, Inc. v. Kimbrell*, 703 So. 2d 303, 305 (Ala. 1997); *see also* Ala. Code § 6-5-102 (1975). National Floral fails to identify any evidence in support of this claim and in response to defendants' motion. The court finds no evidence that establishes the first, third, and fourth elements of this claim. *See Allied Supply Co. v. Brown*, 585 So. 2d 33, 35-36 (Ala. 1991). Furthermore, the court sees no genuine issues of material fact as to these issues. Accordingly, defendants' motion is due to be granted.

    b. **Violation of Trade Secrets Act and equitable relief**

The court finds genuine issues of material fact preclude summary judgment on these claims.

### B. Counterclaim: FLSA Claim For Unpaid Wages

The court finds genuine issues of material fact exist as to whether National Floral employed Mrs. Schlarb in an "administrative capacity" from May 16, 1996 through May 17, 1997, and is, therefore, entitled to the administrative exemption under the FLSA. *See* 29 C.F.R. § 541.2 (1981).

16

## IV. CONCLUSION

For the foregoing reasons, National Floral's motion for summary judgment is due to be denied. Defendants' motions for summary judgment are due to be denied as to all claims, with the exception of National Floral's claim for fraudulent suppression. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 30th day of October, 1998.

                                    /s/ Lynwood Smith
                                    United States District Judge

17